UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Case No. 3:19-cr-33 |
| v. | : Judge Thomas M. Rose |
| VINCENT WARD, | : |
| Defendant. | : |

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
(DOC. 16)**

---

This case is before the Court on the Motion to Suppress (Doc. 16) (the "Motion") filed by Defendant Vincent Ward ("Ward"). In the Motion, Ward seeks an order "suppressing all evidence seized and any statements he made." (Doc. 16 at PAGEID # 37.) The Court held an evidentiary hearing for the Motion on August 19, 2019. (Doc. 27.) On October 7, 2019, Ward filed a post-hearing brief in support of the Motion ("Brief"). (Doc. 29.) On October 23, 2019, the Government filed a post-hearing brief in opposition to the Motion ("Opposition"). (Doc. 33.) Ward did not file a reply brief in response to the Government's post-hearing brief. The matter is ripe for review.

For the reasons discussed below, the Court **DENIES** the Motion. However, as explained below, with respect to Ward's argument in his post-hearing Brief that he "was not provided *Miranda* warnings, despite being subject to a custodial interrogation," Ward may file or make a motion renewing that argument closer to, or during, trial. (Doc. 29 at PAGEID # 136-40.)

**I.     FACTUAL FINDINGS**

The following findings are made based on the evidence submitted by the parties and the

1

testimony at the August 19, 2019 hearing.

On the morning of January 31, 2019, a briefing took place at the West Patrol Operations Division headquarters of the Dayton Police Department ("DPD") regarding a crime blitz to be held that day. Crime blitz operations are performed with uniformed and plain clothed officers, as well as marked and unmarked police cruisers. Individuals are targeted during blitz operations when there is either an active warrant or information that the individual was involved in drug or violent criminal activity. At that briefing, Ward was named as an individual of interest to be targeted in the day's crime blitz; he was believed to be currently involved in drug trafficking. The briefing provided all participants with background information, including what vehicle was currently tied to Ward (a red Chrysler Pacifica with a specified license plate number).

That same day at approximately 10:02 a.m., Task Force Officer Jason Rhodes of the DPD ("Officer Rhodes"), who had attended the crime blitz briefing, observed Ward driving alone in a red Chrysler Pacifica with the license plate number identified in the briefing material. After pursuing the vehicle, Officer Rhodes—who was in plain clothes in an unmarked vehicle—observed Ward allegedly fail to signal a lane change while traveling north on Gettysburg Avenue in Dayton. Officer Rhodes then broadcast over the police radio for assistance from any marked cruiser in performing a traffic stop because of that alleged traffic violation.

Officers Kevin Johnson and Michael Conrads, both uniformed police officers with the DPD who also had attended the crime blitz briefing that morning, were in a marked police cruiser together. They initiated the traffic stop of Ward's vehicle around less than a minute from the time that Officer Rhodes made the radio broadcast. Prior to initiating the traffic stop, Officers Johnson and Conrads confirmed the vehicle's license plate from the briefing, at which point they ran it through the LEADS database. They confirmed that Ward was the registered owner of the vehicle.

Ward pulled his vehicle over. Officer Conrads notified dispatch that a traffic stop was being initiated and Officer Johnson approached the driver's side of the vehicle. At the time that he walked up to the vehicle, Officer Johnson did not see any indication of drug trafficking. After initially making contact, Officer Johnson asked the driver (Ward) for his driver's license. The driver's license confirmed Ward's identity.[1] Officer Conrads requested a K-9 police officer to the scene. Officer Conrads testified that he requested the K-9 officer to conduct a free-air sniff because Ward was a targeted individual in the crime blitz briefing. Officer Johnson testified that the suspicion of criminal activity to call for the K-9 officer was based on the crime blitz briefing the officers had that morning, including Ward's drug history.[2]

At Officer Johnson's request, Ward then stepped out of his vehicle. He was walked back to the police cruiser. Ward sat in the back of the police cruiser, unhandcuffed but not free to leave. Officer Johnson testified that removing Ward from his vehicle and performing a free air sniff were not related to the underlying traffic violation.

Officer Johnson testified that the K-9 officer arrived on scene "within approximately five minutes of the stop," given that the K-9 officer was assigned to the crime blitz and was stationed nearby. Once on scene, the K-9 officer (Jake) conducted a free air sniff at the control of his handler, Officer Seth Gabbard ("Officer Gabbard") of the DPD.[3] Shortly after beginning the free air sniff, Officer Gabbard notified Officers Johnson and Conrads that the K-9 officer had positively alerted on the vehicle for drugs. Officer Johnson then immediately started to search the driver's seat of the vehicle, while Officer Gabbard searched the passenger side. Upon opening the driver's

---

[1] Neither Officer Johnson nor Officer Conrads had any prior contacts with Ward.
[2] Officer Johnson agreed that, if an individual of interest to be targeted in that day's crime blitz was pulled over during the blitz, then the K-9 officer "typically" would be called to perform a free-air sniff around the vehicle, if that individual "had priors for drug activity and was believed …." (Doc. 27 at PAGEID # 94-95.)
[3] Both K-9 officer Jake and Officer Gabbard had undergone K-9 training, and K-9 officer Jake had been a certified drug canine for approximately four years.

3

door of the vehicle, Officer Johnson found a black handgun, located partially under the driver's seat. The gun had eight live rounds in the magazine. Officer Gabbard found a backpack on the front passenger side floorboard, containing a mason jar of marijuana and a bag with a large quantity of a white powder. In accordance with department police, Ward was then placed under arrest and a tow truck was called to impound the vehicle.

Officer Johnson testified that during an ordinary traffic stop he would check an individual's driver's license, determine if there were any outstanding warrants, inspect the vehicle's registration, and make sure there was proof of insurance for the vehicle. In this instance, prior to the stop, Officers Johnson and Conrads knew who the registered owner of the vehicle was, but they still needed to verify that person was driving the vehicle. Officer Johnson could not recall if he requested proof of insurance. Officer Gabbard and Jack had arrived before Officer Conrads completed the written traffic citation that he issued to Ward for the failure-to-signal-a-lane-change violation. The traffic citation indicates an issuance time of 10:14 a.m.

On February 14, 2019, the Grand Jury returned a two-count indictment against Ward in this case. (Doc. 12.) Count 1 charges Ward with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); Count 2 charges Ward with possessing, with the intent to distribute, a mixture or substance containing a detectable amount of heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (*Id.*) On February 15, 2019, Ward appeared for arraignment on the indictment and entered pleas of not guilty. (Doc. 13.)

## II.   ANALYSIS

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "The text of the Amendment thus expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011).

A search conducted without a warrant issued upon probable cause is *per se* unreasonable subject only to a few specifically established and well-delineated exceptions. *United States v. Doxey*, 833 F.3d 692, 703 (6th Cir. 2016). "The exclusionary rule prohibits the admission of evidence seized in searches and seizures that are deemed unreasonable under the Fourth Amendment, as well as derivative evidence acquired as a result of an unlawful search." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (*citing Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963)).

A criminal defendant may seek the suppression of evidence by filing a pretrial motion with the Court. FED. R. CRIM. P. 12(b)(3)(C). "It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003); *U.S. v. Blakeney*, 942 F.2d 1001, 2015 (6th Cir. 1991) (in the context of a motion to suppress, the moving party has the burden of establishing that the evidence was secured by an unlawful search). However, "[t]he Government has the burden of proof to justify a warrantless search." *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002).

In his Brief, Ward makes two main arguments. First, he argues that he was subject to a warrantless search and seizure in violation of the Fourth Amendment. (Doc. 29 at PAGEID # 130-135.) Second, he argues that he was not provided *Miranda* warnings despite being subjected to a

5

custodial interrogation. (*Id.* at PAGEID # 136-40.) The Court addresses each of these arguments below.

### A. Stop, Seizure, and Search

Ward's first argument is that the officers removed him from his vehicle to delay the completion of the traffic stop so that the K-9 officer could arrive on the scene, and that the free air sniff requested by Officer Conrads extended the traffic stop beyond the time necessary to address the traffic stop, thus violating his Fourth Amendment rights. Therefore, according to Ward, all evidence obtained as a result of the (allegedly) unreasonably extended traffic stop should be suppressed on Fourth Amendment grounds.

#### (1) The stop

The initial issue is whether the stop of the vehicle was permissible. This is not seriously contested by Ward. A failure to signal a lane change is a traffic violation that violates Ohio Revised Code § 4511.39. The Court finds that the DPD officers had sufficient probable cause to believe that Ward had violated a traffic law, therefore permitting the traffic stop. *Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"); *see also United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) ("so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment") (internal quotation marks omitted).[4]

---

[4] "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993). "Probable cause is a flexible, common-sense standard." *Id.*, quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983). Probable cause is determined by the totality of the circumstances, is fact-dependent, and will turn on what the officer knew at the time he or she made the stop. *United States v. Puckett*, 422 F.3d 340, 342-43 (6th Cir. 2005). The totality-of-the-circumstances analysis includes a realistic assessment of the situation from the officer's perspective. *Id.*, *citing Ferguson*, 8 F.3d at 392. *See also Davis*, 430 F.3d at 352 (the requirement of probable cause is satisfied where the facts and circumstances within the officer's knowledge and of which he or she had reasonable trustworthy information are sufficient to demonstrate that an offense has been or is being committed).

(2) The search of the vehicle

The next issue, and the crux of Ward's first argument, is whether the search of the vehicle's passenger compartment was permissible. Ward argues that the traffic stop was impermissibly extended, resulting in a search of the vehicle that violated the Fourth Amendment.

The Supreme Court held in *Caballes*[5] that "a dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment's proscription of unreasonable seizures." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015) (*citing Illinois v. Caballes*, 543 U.S. 405 (2005)). In *Rodriguez*, the Supreme Court was subsequently presented with the question of "whether the Fourth Amendment tolerates a dog sniff conducted after completion of a traffic stop." *Id.* at 1612. The Supreme Court held in *Rodriguez* that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.*

The Supreme Court in *Rodriguez* laid out the law concerning a traffic stop's permissible duration and investigations unrelated to the traffic stop:

> A seizure for a traffic violation justifies a police investigation of that violation. A relatively brief encounter, a routine traffic stop is more analogous to a so-called *Terry* stop than to a formal arrest. Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. …
>
> "[T]he Fourth Amendment tolerate[s] certain unrelated investigations that d[o] not

---

[5] The question presented in *Caballes* was "[w]hether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

> lengthen the roadside detention. … [A] traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket. … The seizure remains lawful only so long as unrelated inquiries do not measurably extend the duration of the stop. An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But … he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.

*Rodriguez*, 135 S. Ct. at 1614-15 (internal citations and quotation marks omitted).

The Court in *Rodriguez* likewise discussed what may be necessary to "complete the mission of issuing a warning ticket":

> Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

*Id*. at 1615. The Court also recognized that certain tasks related to officer safety may in fact stem from the officer's traffic mission (such as requiring a driver, who is lawfully stopped, to exit the vehicle). *Id*. at 1615-16. However, the Court noted that conducting a dog sniff is not properly characterized as part of the officer's traffic mission. *Id.* Also, "[o]n-scene investigation into other crimes … detours from that mission," as "do safety precautions taken in order to facilitate such detours." *Id*. at 1616. The Court highlighted that "[t]he critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket … but whether conducting the sniff prolongs—*i.e.*, adds time to—the stop." *Id*. (internal citation and quotation marks omitted).

As noted above, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013) (internal quotation marks omitted). One such exception is the automobile exception. In general, the Fourth Amendment does not require police to obtain a

warrant to search an automobile when probable cause exists to believe it contains contraband. *California v. Carney*, 471 U.S. 386, 390-93 (1985); *United States v. Arnold*, 442 F. App'x 207, 210 (6th Cir. 2011) ("The automobile exception permits police to stop and search a car without a warrant if they have probable cause to believe it contains contraband"). "An alert to the presence of drugs by a properly trained narcotics detection dog is sufficient to establish probable cause to search a vehicle." *United States v. Sharp*, 689 F.3d 616, 618 (6th Cir. 2012). Additionally, "[i]t is well-established that a canine sniff is not a search within the meaning of the Fourth Amendment." *Id.* (internal quotation marks omitted).

Here, Ward argues that the traffic stop was extended by Officer Johnson asking him to get out of his vehicle. (Doc. 29 at PAGEID # 134.) However, Ward also admits that the officer was permitted to request him to step from his vehicle. (*Id.* at PAGEID # 132.) In fact, the officer may require that he do so. *Rodriguez*, 135 S. Ct. at 1615 ("the government's legitimate and weighty interest in officer safety outweighs the *de minimis* additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle") (*citing Pennsylvania v. Mimms*, 434 U.S. 106, 110-111 (1977)) (internal quotation marks omitted). Therefore, that action, in and of itself, cannot impermissibly prolong the stop.

Ward also argues that the traffic stop was extended by placing him in the back of the police cruiser. (Doc. 29 at PAGEID # 132, 134.) However, the officer(s) needed to walk back to the police cruiser in order to complete the mission of issuing a ticket for the traffic violation anyway. Furthermore, Officer Johnson was permitted to ask Ward to sit in the squad car until the citation for the traffic violation had been issued. *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999) ("an officer can lawfully detain the driver of a vehicle until after the officer has finished making record radiochecks and issuing a citation, because this activity would be well within the

9

bounds of the initial stop. [The officer] "lawfully asked defendant to sit in the squad car while he wrote a courtesy citation and performed record checks of his driver's license and registration") (internal citation and quotation marks omitted); *United States v. Delano*, 543 F. Supp. 2d 791, 799 (N.D. Ohio 2008) ("An officer may also lawfully detain a defendant in the back of a squad car while writing citations, checking drivers license information, and running other radio checks, so long as it does not prolong the stop. Therefore, in this case, [the officer's] placing [defendant] in his police car while he ran his and [the other defendant's] social security numbers and wrote the ticket was permissible.") (*citing Wellman*). *Accord*: *Rodriguez*, 135 S. Ct. at 1616 ("Traffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely"). Moreover, even if there was any delay caused, it was not unreasonable and did not measurably extend the stop's duration. *See Delano*, 543 F. Supp. 2d at 799 (delay caused by officer asking additional questions was not sufficient to cause defendant's detention to the back of the patrol car to become unreasonable).

Ward also argues that the traffic stop was extended by Officer Conrads' request for the K-9 officer. (Doc. 29 at PAGEID # 132, 135.) However, Officer Conrads made that request <u>while</u> Officer Johnson was taking actions to complete the mission of issuing a ticket for the traffic violation. (Doc. 27 at PAGEID # 86.) Ward does not show how that mission was "prolonged beyond the time reasonably required to complete" it by Officer Conrads taking one action (requesting a K-9 officer) at the same time that Officer Johnson was taking other actions inherent to completing the mission. And, once on scene, the K-9 officer (Jake) conducted a free air sniff at the control of a completely separate officer: his handler, Officer Gabbard. *Rodriguez*, 135 S. Ct. at 1614-15. ("the Fourth Amendment tolerate[s] certain unrelated investigations that d[o] not

lengthen the roadside detention").

Based on the law and factual findings recited above, the Court finds that the traffic stop did not exceed the time needed to handle the matter for which the stop was made and that the dog sniff did not prolong the stop. *Rodriguez*, 135 S. Ct. at 1612, 1616. *See also United States v. Born*, No. 3:16-cr-160, 2017 U.S. Dist. LEXIS 87867, at *10-11 (S.D. Ohio June 8, 2017) (motion to suppress denied where open air sniff by narcotics dog did not impermissibly extend length of traffic stop); *United States v. Torres*, No. 3:05-cr-51, 2005 U.S. Dist. LEXIS 38175, at *12-14 (S.D. Ohio Dec. 28, 2005) (motion to suppress denied where stop was not unreasonably prolonged and officer had not yet completed traffic investigation for speeding and lane change violation when narcotics dog alerted); *United States v. Lott*, No. 6:17-cr-52, 2018 U.S. Dist. LEXIS 86567, at *16-18 (E.D. Ky. Feb. 7, 2018), *adopted by, and incorporated by reference in,* 2018 U.S. Dist. LEXIS 86238 (E.D. Ky. May 23, 2018) (canine sniff did not impermissibly extend the duration of the detention beyond what was necessary to address the initial purpose for the stop).

Ward argues that the officers' (alleged) "failure to articulate their suspicions of criminal activity makes the extension of the stop for a K-9 to perform a sniff a violation of the Defendant's Fourth Amendment protections." (Doc. 29 at PAGEID # 132-33.) However, again, the evidence does not show that the stop was extended for the K-9 sniff. Ward's argument misses the issue.

Ward also points out that the Sixth Circuit has held that, "[o]nce the purpose of the initial traffic stop is completed, an officer cannot further detain the vehicle or its occupants unless something happened *during the stop* to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot." *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005) (emphasis in original) (internal quotation marks omitted). Here, something did happen during the stop: the K-9 officer alerted to the presence of drugs, thus establishing probable cause to search

the vehicle.[6] *Sharp*, 689 F.3d at 618. At that point, "[t]he traffic stop then ceased being a traffic stop and turned into a narcotics investigation." *Torres*, 2005 U.S. Dist. LEXIS 38175, at *14. Prior to that point, Ward and the vehicle were not detained longer than necessary to complete the purpose of the traffic stop. No undue prolongation whatsoever is apparent; the officers appear to have been diligent. Finally, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).

Therefore, the Court finds that the search of the Vehicle's passenger compartment, made pursuant to probable cause established by the K-9 officer's alert during the lawful traffic stop, was permissible. The fruits of that search will not be suppressed.[7]

### B. Argument Concerning *Miranda* Warnings

In his Brief, Ward makes a second argument: that he was not provided *Miranda* warnings, despite being subject to a custodial interrogation, and therefore any statements and evidence obtained as a result of Ward's custodial interrogation should be suppressed on the grounds that his Fifth Amendment rights were violated. (Doc. 29 at PAGEID # 140.)

Although the Motion arguably seeks the corresponding relief,[8] this second argument was not specified in the Motion. The "Facts" section of the Motion does not even reference that Ward was put in the back of a police cruiser, was asked any questions, or made any statements. Similarly, the "Law & Argument" section of the Motion does not reference any questioning or statements, and never mentions *Miranda*. The subsequent Brief argues that Ward was in custody for purposes

---

[6] As referenced above, Officer Gabbard testified that his dog met the criteria and qualifications of being a narcotic-detection dog.

[7] Given the Court's finding, it does not reach the Government's other arguments to justify the search of the Vehicle, namely the inevitable discovery exception and/or inventory search exception to the warrant requirement. (Doc. 33 at PAGEID # 151.)

[8] Again, the Motion states that Ward seeks an order "suppressing all evidence seized and any statements he made." (Doc. 16 at PAGEID # 37.)

of *Miranda* (*see, e.g.* Doc. 29 at PAGEID # 140-41). However, because the Court did not hear testimony about any questions posed to—or statements made by—Ward (or even whether or not *Miranda* warnings were provided to him), the Court is not ruling on any aspect of Ward's second argument at this time.[9] Therefore, while the Court preliminarily denies the Motion with respect to Ward's argument for suppression because he (allegedly) was not provided *Miranda* warnings despite (allegedly) being subject to a custodial interrogation, Ward may file or make a motion renewing that argument closer to, or during, trial. In other words, that portion of the motion is denied without prejudice to refiling.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Suppress (Doc. 16).

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, November 22, 2019.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[9] Without supporting factual citation, Ward argues: "Law enforcement failed to provide the Defendant his Miranda warnings, despite placing the Defendant in custody and asking questions likely to illicit an incriminating response." (Doc. 29 at PAGEID # 136.)